**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SHAW SSS FABRICATORS INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-10-1612 |
| | § | |
| RELIANT ENERGY MID-ATLANTIC | § | |
| POWER HOLDINGS, LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This is a contract dispute arising from an agreement between Shaw SSS Fabricators and the owners of the Keystone Station Flue Gas Desulfurization Project ("Keystone Station"), a desulfurization station located in Shelocta, Pennsylvania. Keystone Station is owned by Reliant Energy Mid-Atlantic Power Holdings, LLC; Constellation Power Source Generation, Inc.; Keystone Power LLC; Duquesne Keystone LLC; PPL Montour, LLC; Exelon Generation Company, LLC; and PSEG Fossil, LLC (collectively the "Keystone Station Owners"). Shaw SSS and the Keystone Station Owners entered into an agreement under which Shaw SSS agreed to provide large amounts of fabricated structural steel for use in the Keystone Station. Shaw SSS alleges that it performed under the contract and is owed $905,374.88. (Docket Entry No. 1, ¶¶ 13–16). Shaw SSS asserted claims for breach of contract and for violations of the Texas Prompt Payment Statute, TEX. PROP. CODE § 28.001, *et seq.* The Keystone Station Owners denied liability and counterclaimed for breach of contract and negligence. They alleged that Shaw SSS's performance was deficient and that although they had withheld part of the contract payment, they were entitled to withhold more. (Docket Entry No. 11).

The Keystone Station Owners moved for leave to file a third-party claim against Stone & Webster, Inc. (Docket Entry No. 16). Stone & Webster is an affiliate of Shaw SSS and owned by the same holding company. In their proposed third-party complaint, the Keystone Station Owners alleged that Stone & Webster "contracted to provide engineering, procurement and construction management services to the Keystone Station Owners in connection with the construction and development" of Keystone Station. (Docket Entry No. 19-1, Proposed Third-Party Complaint, ¶ 1). The Keystone Station Owners allege that its dispute with Shaw SSS will turn "on an . . . interpretation of certain provisions in the contract at issue." (Docket Entry No. 16, at 3). The primary point of dispute between Shaw SSS and the Keystone Station Owners turns on the interpretation of language in the contract that governs the Keystone Station Owners' remedies in the event of Shaw SSS's nonperformance. In their proposed third-party complaint, the Keystone Station Owners allege that if Shaw SSS's contract interpretation prevails, Stone & Webster is liable to the extent the Keystone Station Owners are liable because Stone & Webster "approved the contract language and recommended that the Keystone Stations Owners adopt and agree to that language." (Docket Entry No. 19-1, Proposed Third Party Complaint, ¶ 6). The Keystone Station Owners also allege that the Shaw SSS personnel who recommended Stone & Webster had a "hidden financial incentive to persuade the Keystone Station Owners to award the steel fabrication contract to their affiliate," which the Shaw SSS personnel did not disclose to the Keystone Station Owners. (*Id.*, ¶ 7).

Shaw SSS opposed the Keystone Station Owners' motion for leave to file a third-party complaint, (Docket Entry No. 18); the Keystone Station Owners replied and filed a copy of the proposed complaint, (Docket Entry No. 19); Shaw SSS surreplied, (Docket Entry No. 20); and the

Keystone Station Owners filed a surresponse, (Docket Entry No. 21). Based on the motion, responses, and replies; the proposed third-party complaint; and the applicable law, the Keystone Station Owners' motion for leave to file their proposed third-party complaint is granted. The reasons are explained below.

**I.      Rule 14(a)(1) of the Federal Rules of Civil Procedure**

Federal Rule of Civil Procedure 14(a)(1) provides that "[a] defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." A defending party may implead a nonparty without leave of the court by filing a third-party complaint less than 14 days after serving its original answer. If more time has passed, the defending party must obtain the court's leave. FED. R. CIV. P. 14(a).

District courts have "'wide discretion in determining whether to permit such third party procedure.'" *Briones v. Smith Dairy Queens, Ltd.*, Civ. A. No. V-08-48, 2008 WL 4200931, at *2 (S.D. Tex. Sept. 9, 2008) (quoting *McDonald v. Union Carbide Corp.*, 734 F.2d 182, 183 (5th Cir. 1984)). "The factors applied when deciding whether to allow a third-party complaint include prejudice placed on the other parties, undue delay by the third-party plaintiff, lack of substance to the third-party claim, and advancing the purposes of Rule 14 (such as avoiding duplicative suits on closely related issues)." *Id.* (citing 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1443, at 300–11 (2d ed. 1990)).

The court's discretion may only be exercised when the claim is within the scope of impleader established by Rule 14(a). 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MAY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1443, at 355 (3d ed. 2010). "[A] third-party complaint is not proper under Rule 14 if the defendant cannot show a basis for the third-party defendant's liability

3

to the defendant." *ADG Rig Servs., Inc. v. JPMorgan Chase Bank, N.A.*, Civ. A. No. H-08-1640, 2009 WL 1011151, at *2 (S.D. Tex. Apr. 15, 2009) (citing *McCain v. Clearview Dodge Sales, Inc.*, 574 F.2d 848, 849–50 (5th Cir. 1978)). The Fifth Circuit has noted that Rule 14(a) "exists to bring in third parties who are *derivatively* liable to the impleading party." *Hassan v. La. Dep't of Transp.*, No. 98-312224, 1999 WL 642861, at *2 (5th Cir. July 26, 1999) (emphasis in original); *see also Briones*, 2008 WL 4200931, at *2 ("Such complaints require that the 'defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff.'" (quoting *Anadarko Petroleum Corp. v. Great Plains Gas Compression, Inc.*, Civ. A. No. H-05-1949, 2007 WL 38327, at *1 (S.D. Tex. Jan.4, 2007)). "The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough." 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MAY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1446, at 433–34 (3d ed. 2010).

**II.     Analysis**

The Keystone Station Owners' claim that Stone & Webster is liable to the Keystone Station Owners if Shaw SSS's interpretation of the contract prevails is derivative of Shaw SSS's claim against the Keystone Station Owners. The Keystone Station Owners' proposed amended complaint contains a "Nature of the Case" section that provides the factual basis for their claims against Stone & Webster. In this section, the Keystone Station Owners allege that if this court finds the Keystone Station Owners liable under their contract with Shaw SSS, Stone & Webster is liable to the Keystone Station Owners because Stone & Webster advised the Keystone Station Owners on their contract with Shaw SSS. The Keystone Station Owners' proposed complaint states in part:

> In the unlikely event that Shaw SSS's reading of the contract is judicially determined to be correct, then it is the Keystone Station

> Owners' position that [Stone & Webster] is liable for the resulting losses, in whole or in part, because [Stone & Webster] approved the contract language and recommended that Keystone Station Owners adopt and agree to that language.

(Docket Entry No. 19-1, Proposed Third Party Complaint, ¶ 6). Based on these factual allegations, the Keystone Station Owners assert claims against Stone & Webster for breach of contract, breach of warranty, fraud by misrepresentation or nondisclosure, breach of fiduciary duty, and negligence. (*Id.*, ¶¶ 18–30). The Keystone Station Owners seek "damages, if any, which the Keystone Station Owners are judicially determined to owe to Shaw SSS, in the . . . event that Shaw SSS prevails on its claim against the Keystone Station Owners." (*Id.*, ¶ 33(i)). This claim is derivative of Shaw SSS's breach of contract claim against the Keystone Station Owners and within the scope of impleader.

Shaw SSS does not challenge whether the Keystone Station Owners have shown "a basis for the third-party defendant's liability to the defendant." *See ADG Rig Servs., Inc.*, 2009 WL 1011151, at *2. Instead, Shaw SSS argues that some of the Keystone Station Owners' claims are nonderivative and that those nonderivative claims are "so broad that [they] potentially encompasses problems with the work performed by the construction manager and every subcontractor on the project." (Docket Entry No. 20, at 2). Shaw SSS's concern stems from two aspects of the proposed third-party complaint. First, the Keystone Station Owners allege that Stone & Webster had a "hidden financial incentive" to recommend Shaw SSS over other competing bidders, and that but for Stone & Webster hiding its financial incentive from the Keystone Station Owners, the Keystone Station Owners would not have hired Shaw SSS and incurred damages from Shaw SSS's deficient performance. Shaw SSS argues that this allegation is nonderivative because it does not depend on whether Shaw SSS prevails against the Keystone Station Owners. Second, Shaw SSS argues that

the language for some of the Keystone Station Owners' claims is so broad that it "potentially includes work by every other subcontractor on the [p]roject." (*Id.*, at 5). Shaw SSS argues that the proposed third-party complaint asserts claims against Stone & Webster that could include claims based on work performed by subcontractors other than Shaw SSS. For example, the Keystone Station Owners' negligence claim states that "[Stone & Webster] owed a duty to the Keystone Station Owners to satisfy the applicable standard of care in provision of engineering, procurement, and construction management services" and alleges that Stone & Webster "breached this duty on multiple occasions." (Docket Entry No. 19-1, Proposed Third-Party Complaint, ¶ 30).

The Keystone Station Owners correctly respond that even if some of their proposed third-party claims are nonderivative, this does not provide a basis to deny the motion for leave to file the third-party complaint. Under Federal Rule of Civil Procedure 18, "[a] party asserting a . . . third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Consistent with Rule 18, courts have held that a third-party complaint may assert both derivative and nonderivative claims. *See e.g.*, *Friedman v. Hartmann*, 787 F. Supp. 411 (S.D.N.Y. 1992) ("Once a party has asserted a proper impleader claim, he qualifies under Rule 18 to assert any and all additional claims — regardless of whether transactionally related to the impleader claims he may have against the third-party defendant." (internal quotations and citations omitted)). That some of the Keystone Station Owners' claims are nonderivative does not provide a basis to deny their motion for leave to file the third-party complaint.

A court is given "wide discretion" in deciding whether to allow a third party complaint. *McDonald*, 734 F.2d at 183 (quoting *Southern Ry. Co. v. Fox.*, 339 F.2d 560, 563 (5th Cir.1964)). District courts considering whether to grant leave have considered factors such as possible prejudice

to the other parties, undue delay by the third party plaintiff, and whether allowing the third party complaint would further the goals of Rule 14, by eliminating duplicative suits and promoting judicial economy. *See Briones*, 2008 WL 4200931, at *2; s*ee also American Intern. Specialty Lines Ins. Co. v. 7-Eleven, Inc*., Civ. A. No. 3:08-CV-807, 2009 WL 2448440, *1 (N.D. Tex. Aug. 7, 2009); *Reynolds v. Eveready Marine, Inc.*, No. Civ.A 02-3062, 2003 WL 21088095 (E.D. La. May 7, 2003). Shaw SSS argues that the prejudice factor weighs in favor of denying leave because the Keystone Station Owners' complaint asserts numerous nonderivative claims that would "prejudice [Shaw SSS] by expanding discovery and trial to encompass alleged problems with work that [Shaw SSS] did not perform, which potentially includes work by every other subcontractor on the project." (Docket Entry No. 20, at 5). But while some language in the Keystone Station Owners' proposed third-party complaint *may* be broad enough to include claims against Stone & Webster based on defective work by subcontractors other than Shaw SSS, the Keystone Station Owners' proposed third-party complaint does not name any subcontractor other than Shaw SSS, nor does it identify any allegedly defective work other than the work performed by Shaw SSS. To the contrary, the factual allegations supporting these claims relate only to Shaw SSS's work under its steel fabrication contract with the Keystone Station Owners. The damages sought in the third-party complaint relate only to Shaw SSS. The Keystone Station Owners' proposed third-party complaint seeks the following categories of damages:

> (1) damages . . . which the Keystone Station Owners are judicially determined to owe to Shaw SSS, in the . . . event that Shaw SSS prevails on its claim against the Keystone Station Owners;
>
> (2) damages for loss of income;

 (3) damages for additional cost of steel fabrication design, manufacture and installation;

 (4) damages for the cost to complete the work that [Shaw] agreed and then failed to perform;

 (5) damages for [Shaw's] unworkmanlike performance;

 (6) damages for inspection and testing;

 (7) compensatory damages in an amount to be determined at trial;

 (8) reasonable and necessary attorney fees in an amount to be determined at trial;

 (9) costs of suit incurred herein;

 (10) pre- and post-judgment interest as provided by law;

 (11) exemplary damages; and

 (12) such other . . . relief at law or in equity to which the Keystone Station Owners may be justly entitled.

(Docket Entry No. 19, Proposed Third-Party Complaint, ¶ 33).

  Because the claims in the proposed third-party complaint arise from the same facts and raise the same issues as the claims between Shaw SSS and the Keystone Station Owners, there is little likelihood of prejudice to Shaw SSS if the proposed third-party complaint is filed. The claims in the proposed third-party complaint arise from the same core set of facts giving rise to Shaw SSS's claims against the Keystone Station Owners. The claims involve the same contracts, the same construction project, the same witnesses and the same documents, which also means that adding the proposed third-party claims is unlikely to cause delay. The overlap between the claims between Shaw SSS and the Keystone Station Owners, and the proposed claims between the Keystone Station Owners and Stone & Webster, also means that the final factor in the discretionary analysis —

avoiding duplicative lawsuits — weighs in favor of granting the Keystone Station Owners leave to file their third-party complaint.

**III.     Conclusion**

The Keystone Station Owners' motion for leave to file the proposed third-party complaint, (Docket Entry No. 16), is granted.

SIGNED on December 28, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge